IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIA T. MALLOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 09-01J |
| | ) |
| MICHAEL J. ASTRUE, | )   JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

GIBSON, J.

### I. SYNOPSIS

This matter comes before the Court on the parties' cross-motions for summary judgment. Document Nos. 9 & 12. The Court has jurisdiction in this case pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Defendant's motion for summary judgment will be denied, and the Plaintiff's motion for summary judgment will be denied insofar as it seeks an award of benefits and granted insofar as it seeks a remand for further administrative proceedings. The decision of the Commissioner of Social Security ("Commissioner") will be vacated, and the case will be remanded to him for further proceedings.

### II. PROCEDURAL HISTORY

Plaintiff Mia T. Malloy ("Malloy") protectively applied for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433] on June 21, 2006,

1

alleging disability as of November 1, 2005. R. p. 102. The application was denied by the state agency on September 7, 2006. R. p. 68. Malloy responded on October 12, 2006, by filing a timely request for an administrative hearing. R. p. 74. On September 11, 2007, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge Patricia C. Henry (the "ALJ"). R. p. 29. Malloy, who was represented by counsel, appeared and testified at the hearing. R. pp. 32-51. Timothy Muller ("Muller"), an impartial vocational expert, also testified at the hearing. R. pp. 51-55. In a decision dated January 18, 2008, the ALJ determined that Malloy was not "disabled" within the meaning of the Act. R. pp. 10-25. The Appeals Council denied Malloy's request for review on November 7, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. p. 1. Malloy commenced this action on January 5, 2009, seeking judicial review of the Commissioner's decision. Document No. 1. Malloy and the Commissioner filed motions for summary judgment on April 13, 2009, and May 13, 2009, respectively. Document Nos. 9 & 12. These motions are the subject of this memorandum opinion.

### III. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a

> determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. DISCUSSION

In her decision, the ALJ determined that Malloy had not engaged in substantial gainful activity subsequent to her alleged onset date of November 1, 2005. R. p. 15. Malloy was found to be suffering from degenerative disc disease of the lumbar spine and depression, which were deemed to be "severe" impairments for purposes of 20 C.F.R. § 404.1520(a)(4)(ii), as well as Epstein Barr virus, mononucleosis, chronic fatigue syndrome, asthma, and neurosensory detachment of the fovea, which were deemed to be "non-severe" impairments. R. pp. 15-17. The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. p. 17. In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Malloy's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except is

>  limited to occasional postural maneuvers such as stooping, kneeling, crouching, crawling, and climbing and is limited to simple, routine, and repetitive tasks not performed in a fast-paced production environment, involving only simple work-related decisions, and in general, relatively few work place changes.

*Id.* Malloy was born on July 4, 1971, making her thirty-four years old as of her alleged onset date and thirty-six years old as of the date of the ALJ's decision. R. p. 24. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 404.1563(c). She had a high school education and was able to communicate in English. R. p. 24. Based on the applicable residual functional capacity and vocational assessments, the ALJ determined that Malloy could not return to her past relevant work as a registered nurse. R. p. 23. Nevertheless, the ALJ concluded that Malloy could work as a surveillance system monitor, an addresser, a laundry pricing clerk, or an inspector/checker. R. p. 24. Muller's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. p. 53.

In support of her motion for summary judgment, Malloy contends that the ALJ erred in determining that her Epstein Barr virus and chronic fatigue syndrome were "non-severe" impairments, in determining that her impairments did not meet or medically equal a Listed Impairment, in failing to incorporate environmental limitations into the residual functional capacity assessment (and corresponding hypothetical question), and in relying on her "sporadic" activities of daily living as a basis for denying her application. Document No. 11, pp. 11-15. After a thorough review of the record, the Court is convinced that a remand for further proceedings is required because of an error committed by the ALJ in determining Malloy's residual functional capacity.

The ALJ's residual functional capacity assessment was based primarily on the opinions expressed by two nonexamining consultants. On August 22, 2006, Dr. Jason Rasefske ("Dr. Rasefske") opined that Malloy could occasionally lift or carry objects weighing up to ten pounds, frequently lift or carry objects weighing slightly less than ten pounds, stand or walk for up to two hours during the course of an eight-hour workday, and sit for up to six hours during the course of an eight-hour workday.[1] R. p. 180. Although Dr. Rasefske indicated that Malloy's pushing and pulling abilities were unlimited, and that she had no manipulative, visual or communicative limitations, he identified some postural and environmental limitations that he believed would erode Malloy's ability to perform the full range of sedentary work. R. pp. 180-182. Specifically, Dr. Rasefske reported that Malloy was limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling, and that she needed to avoid concentrated exposure to extreme cold temperatures, extreme heat, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, and other work-related hazards. R. pp. 181-182. Dr. Manella Link ("Dr. Link"), a nonexamining consulting psychologist, opined on September 6, 2006, that Malloy had only a "mild" degree of limitation with respect to her activities of daily living, maintenance of social functioning, and maintenance of concentration, persistence or pace. R. pp. 186, 196.

As the ALJ pointed out in her opinion, the administrative record does not contain a medical

---

[1] Dr. Rasefske's opinion was consistent with the ALJ's ultimate finding that Malloy could engage in sedentary work. The regulation defining the term "sedentary work" provides:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

source statement from a treating or examining physician detailing Malloy's functional limitations. R. p. 23. The ALJ cannot be faulted for the absence of such a statement, since the burden of production was on Malloy to establish her inability to perform specific work-related tasks. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999). Because no treating or examining physician had submitted a medical source statement, it was not improper for the ALJ to rely heavily on the opinions expressed by nonexamining consultants in determining Malloy's residual functional capacity. Nevertheless, the ALJ erred in not incorporating the environmental limitations found by Dr. Rasefske into her residual functional capacity assessment and corresponding hypothetical question to Muller.

At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit has consistently held that, in order for a vocational expert's testimony to constitute "substantial evidence" of the existence of jobs consistent with a claimant's residual functional capacity, the administrative law judge's hypothetical question to the vocation expert must "adequately convey" *all* of the claimant's work-related limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Dr. Rasefske clearly indicated that Malloy needed to avoid concentrated exposure to extreme cold temperatures, extreme heat, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, and other work-related hazards. R. p. 182. These limitations were

not included within the ALJ's hypothetical question to Muller. R. pp. 52-53. The Court also notes that Dr. Rasefske's indication that Malloy was limited to only occasional balancing was omitted from the hypothetical question. R. pp. 52-53, 181.

The environmental limitations (and the "occasional balancing" postural limitation) found by Dr. Rasefske were omitted from the ALJ's residual functional capacity assessment as well as from the hypothetical question posed to Muller. R. p. 17. These omissions indicate that the ALJ may not have believed the relevant limitations to be credibly established. The Court acknowledges that an administrative law judge need not incorporate every limitation *alleged* by a claimant within his or her residual functional capacity assessment and corresponding hypothetical question. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Nevertheless, an administrative law judge cannot reject a limitation that is established in the record based on *undisputed* evidence. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."). Because the administrative record contained no medical source statements from treating or examining physicians, Dr. Rasefske's assessment of Malloy's physical capacities was uncontradicted. The ALJ was not entitled to unilaterally reject specific limitations found by Dr. Rasefske, since federal courts have consistently recognized that an administrative law judge does not possess the expertise to extrapolate a claimant's functional limitations from a cold reading of medical records that do not describe how medically determinable impairments translate into work-related limitations. *Rivera-Torres v. Secretary of Health & Human*

*Services*, 837 F.2d 4, 6-7 (1st Cir. 1988); *Barton v. Astrue*, 549 F.Supp.2d 1106, 1123 (E.D.Mo. 2008); *Brown v. Barnhart*, 285 F.Supp.2d 919, 931 (S.D.Tex. 2003); *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000); *Gathright v. Shalala*, 872 F.Supp. 893, 898 (D.N.M. 1993). This is not a situation in which evidence of a particular functional limitation was so insignificant, or so overwhelmed by contrary medical evidence, that it could have been implicitly rejected without explanation. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008). In this case, the ALJ appears to have either rejected or overlooked seven different functional limitations identified by a medical consultant. R. pp. 181-182. In light of this reality, her residual functional capacity assessment cannot stand.

  Even if the ALJ had fully incorporated all of the limitations identified by Dr. Rasefske, the record contains evidence that Malloy's condition may have deteriorated subsequent to Dr. Rasefske's assessment. Malloy worked as a registered nurse for roughly fourteen years. R. p. 115. Her employment was apparently terminated on June 6, 2005. R. p. 114. This termination occurred a little less than five months before her alleged onset date. Malloy's treatment records indicate that her back problems began in 1993, when she was struck by lightning. R. pp. 148, 156. Her pain exacerbated in May 2006. R. p. 143. A magnetic resonance imaging ("MRI") scan showed that Malloy was suffering from "nerve root compression of L4-L5" and "disk bulges at L5-S1 and L3-L4." R. p. 142. Dr. Gary S. Kramer ("Dr. Kramer") injected an epidural steroid into Malloy's back on May 17, 2006. R. p. 146. Malloy continued to experience "a significant amount of pain" after the injection. R. p. 176. On June 9, 2006, Dr. Kevin Zitnay ("Dr. Zitnay") performed surgery on

Malloy's back at Conemaugh Valley Memorial Hospital in Johnstown. R. pp. 161-162. The surgery did not completely alleviate Malloy's pain. Although Malloy no longer felt pain in her lower extremities, her back pain continued to radiate to her buttocks. R. p. 170. In July 2006, Malloy reported that she had experienced a temporary, twenty-minute period of paralysis below her waist. R. p. 175. Dr. Rasefske, of course, rendered his opinion concerning Malloy's functional capacities on August 22, 2006. R. p. 183. At that time, Malloy's treating physicians continued to report that her pain was exacerbated by prolonged standing, walking and sitting. R. p. 243.

Malloy's husband unexpectedly died in August 2006. R. pp. 232, 249. This event caused Malloy to suffer from post-traumatic stress disorder. R. pp. 339-349. On September 17, 2006, Malloy was involved in a car accident. R. p. 200. The impact of the crash caused her to temporarily lose consciousness. *Id.* X-rays of her chest, ankle and pelvis revealed that she had not sustained fractures. R. pp. 216-219. She spent two days at Mercy Hospital in Pittsburgh, Pennsylvania. R. pp. 200-201. On October 4, 2006, Dr. Zitnay observed that the accident had significantly increased Malloy's back pain, making it difficult for her to walk. R. p. 226. Malloy sought psychiatric treatment in April 2007. R. p. 250. As of June 19, 2007, Malloy was experiencing problems with her memory as a result of her "closed head injuries." R. p. 246. She was not able to do much lifting or bending. *Id.*

Dr. Rasefske rendered his consultative opinion concerning Malloy's physical capacities almost a full month before Malloy's car accident. R. p. 183. He indicated that his residual functional capacity assessment, if credited, would warrant a "durational denial" as of November 1,

2006. R. p. 185. In order for an individual to be eligible for benefits under the Act, his or her inability to work must last (or be expected to last) for a statutory twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Dr. Rasefske evidently believed that Malloy would be able to work as of the one-year anniversary of her alleged onset date. His assessment obviously did not account for any injuries sustained by Malloy in the car accident.

Dr. Link's consultative opinion was rendered on September 6, 2006. R. p. 186. It is not clear whether Dr. Link was aware of Malloy's husband's death as of that date. In any event, the documentary record contains evidence that Malloy's mental condition deteriorated somewhat during the weeks and months following her husband's death. R. pp. 339-349. Dr. Link opined that Malloy had only a "mild" degree of limitation in her activities of daily living, her maintenance of social functioning, and her maintenance of concentration, persistence or pace. R. p. 196. Under the Commissioner's regulations, a "mild" degree of limitation is similar to that caused by a "non-severe" impairment. 20 C.F.R. § 404.1520a(d)(1). Malloy's depression, of course, was ultimately found to be "severe." R. p. 15. Because Dr. Link's assessment was provided just weeks after the death of Malloy's husband, it did not account for the subsequent deterioration of Malloy's mental condition. Malloy reportedly had a "major melt down" a year after Dr. Link's assessment. R. p. 340.

Where a claimant has both exertional and nonexertional limitations, there is a particularly acute need for a reliable residual functional capacity determination. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). The ALJ clearly omitted several limitations which had been identified by

Dr. Rasefske. Consequently, a remand for further proceedings is required. The forthcoming proceedings will also give the Commissioner a fresh opportunity to reevaluate Malloy's mental impairments, and to fully account for any resulting nonexertional limitations.

The Commissioner argues that the environmental limitations found by Dr. Rasefske (and omitted by the ALJ) would not significantly erode the class of jobs which Malloy could perform. Document No. 13, pp. 19-21. He contends that the relevant environmental limitations were fully accounted for by the ALJ's decision to limit Malloy to a range of unskilled sedentary work. *Id.*, p. 20. This argument is without merit. First of all, neither the definition of the term "sedentary work" appearing in the Commissioner's regulations nor the additional limitations conveyed in the ALJ's hypothetical question to Muller contained anything related to a need to avoid concentrated exposure to extreme cold temperatures, extreme heat, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, or other workplace hazards. 20 C.F.R. § 404.1567(a); R. pp. 52-53. Second, even if it were apparent that the jobs identified by Muller would not have been compromised had these additional limitations been adequately conveyed, this Court has no authority to make its own factual findings in a proceeding conducted under § 405(g). *Grant v. Shalala*, 989 F.2d 1332, 1338 (3d Cir. 1993).

On remand, the Commissioner remains free to reject limitations that are not credibly established in the record. *Rutherford*, 399 F.3d at 554. The Court does not mean to suggest that every limitation identified in Dr. Rasefske's report (even if contradicted by competent medical evidence) must be incorporated within the ultimate residual functional capacity determination.

Nevertheless, if the Commissioner wishes to reject a particular limitation, he must provide an adequate explanation for doing so. *Reefer v. Barnhart*, 326 F.3d 376, 382 (3d Cir. 2003). In her opinion denying Malloy's application, the ALJ failed to explain why she did not believe Malloy to have environmental limitations. R. pp. 17-23. Moreover, the Commissioner is not free to employ his own expertise (or the expertise of an administrative law judge) against that of a physician who provides competent medical evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). As the ALJ herself pointed out, the administrative record contained no medical source statement from a treating or examining physician. R. p. 23. The only physical-capacities assessment contained in the record was that provided by Dr. Rasefske. In the absence of contrary medical evidence, the ALJ was not free to reject specific functional limitations identified in Dr. Rasefske's consultative report. If the evidentiary record is supplemented on remand, it will be the prerogative of the Commissioner (or an administrative law judge) to resolve any evidentiary conflicts. Nothing in this opinion should be construed to remove particular factual issues from consideration.

In light of the defective residual functional capacity assessment, and the resulting need for a remand, the remaining issues raised by Malloy are moot. Nonetheless, Malloy remains free to press those issues during the course of the forthcoming administrative proceedings. Having reviewed the ALJ's opinion in detail, the Court is convinced that her analysis at the third step of the sequential evaluation process was sufficient to satisfy the standard enunciated by the United States Court of Appeals for the Third Circuit in *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007). If Malloy still believes that her impairments meet or medically equal a Listing, she can

make that argument on remand. With respect to the ALJ's step-two determinations concerning Malloy's Epstein Barr virus and chronic fatigue syndrome, the Court notes that the second step of the process is "a *de minimis* screening device" designed to quickly "dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003). For this reason, the second step is "to be rarely utilized as [a] basis for the denial of benefits." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d Cir. 2004). In this case, the second step was *not* utilized as a basis for denying Malloy's application, since the severity determinations regarding Malloy's degenerative disc disease and depression necessitated the continuation of the sequential evaluation process. R. pp. 15-17. In any event, Malloy remains free to argue on remand that her Epstein Barr virus and chronic fatigue syndrome are "severe" impairments. A reliable residual functional capacity assessment, of course, must account for *all* of a claimant's limitations, including those resulting from "non-severe" impairments. 20 C.F.R. § 404.1545(a)(2). Thus, any limitations resulting from Malloy's Epstein Barr virus and chronic fatigue syndrome must be fully accounted for even if the impairments themselves are ultimately deemed to be "non-severe." Furthermore, "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981). An ability to care for one's "personal needs" and perform limited "household chores" cannot be equated with an ability to engage in substantial gainful activity. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). Nevertheless, a claimant's activities of daily living can be properly considered by an administrative law judge for the purpose of evaluating a claimant's credibility.

*Zulinski v. Astrue*, 538 F.Supp.2d 740, 753 (D.Del. 2008). All of these issues can be properly considered during the course of the upcoming proceedings.

## V. CONCLUSION

The ALJ's residual functional capacity assessment (and corresponding hypothetical question to Muller) failed to incorporate seven functional limitations identified in Dr. Rasefske's consultative report. R. pp. 17, 52-53, 181-182. The Court cannot determine whether the ALJ "truly considered" this portion of the report, or whether she simply overlooked it. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 506 (3d Cir. 2009). Even if the ALJ had explained her reasons for rejecting these limitations, she was not entitled to discount competent medical evidence without relying on countervailing medical evidence. *Morales v. Apfel*, 225 F.3d 310, 317-319 (3d Cir. 2000). The record contained no other medical opinion concerning Malloy's functional capacities. The ALJ's residual functional capacity assessment was not "supported by substantial evidence." 42 U.S.C. § 405(g).

A judicially-ordered award of benefits is proper only where the administrative record of a case has been "fully developed," and where "the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-222 (3d Cir. 1984). That standard is not met here. Malloy's treating and examining physicians did not submit medical source statements detailing her functional abilities, and the record contains no evidence that a consultative medical examination was performed. Both consultative assessments relied upon by the ALJ were submitted prior to the car accident of September 17, 2006. Although Malloy's alleged

onset date was November 1, 2005, she is insured for benefits through December 31, 2010. R. pp. 13, 15. The existing record leaves plenty of room for further factual development with respect to whether (and, if so, when) Malloy became statutorily disabled. Accordingly, the decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings. An appropriate order follows.

AND NOW, this _14th_ day of March, 2010, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff (Document No. 9) and the Motion for Summary Judgment filed by the Defendant (Document No. 12), IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment is **DENIED** insofar as it seeks an award of benefits but **GRANTED** insofar as it seeks a vacation of the Defendant's administrative decision, and a remand for further administrative proceedings, and that the Defendant's Motion for Summary Judgment is **DENIED**. The decision of the Commissioner of Social Security is hereby **VACATED**, and the case is remanded to him for further proceedings consistent with the foregoing memorandum opinion.

17

BY THE COURT:

_____
KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record